IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MATTHEW TOTILO, individually and on behalf of himself and all others similarly situated, | : : : | |
| Plaintiff | : | Case No. 07-cv-10991-LAK |
| v. | : | |
| STEVEN F. HERBERT and JAMES P. GROSS, | : : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
(FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED)**

**KING & SPALDING LLP**
Lisa Albert (LA-7264)
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone:  212-556-2100
Fax:  212-556-2222

and

**KING & SPALDING LLP**
Michael R. Smith *(admitted pro hac vice)*
Benjamin Lee *(admitted pro hac vice)*
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: 404-572-4600
Fax:  404-572-5100

*Attorneys for Defendants Steven F. Herbert
and James P. Gross*

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND ................................................... 4

    A.    NetBank's Struggles To Maintain Adequate Capital ..................................... 4

    B.    The September 2007 Shut-Down Of NetBank And FDIC Receivership .................... 6

    C.    Plaintiff's Allegations ............................................................................ 7

III.  ARGUMENT AND CITATION OF AUTHORITIES ......................................... 8

    A.    Point One -- Plaintiff Lacks Standing To Prosecute The Claims He Seeks
        To Assert ......................................................................................... 8

        1.    Plaintiff's claims are derivative and may be brought, if at all, only by the
            FDIC ........................................................................................ 8

        2.    The labels Plaintiff seeks to apply to his claims do not permit an end-run
            on the FDIC's prerogative with respect to the claims asserted here ....................... 11

    B.    Point Two -- Plaintiff Fails To Sufficiently Allege The Elements Required
        To State A Claim On Any Of His Purported "Direct" Counts ................................. 12

        1.    Plaintiff fails to state a claim for fraud ................................................... 12

            a.    Plaintiff fails to allege with the required particularity that the
                challenged statements were false ................................................... 14

            b.    Most of the challenged statements merely state opinions or
                predictions about future events and are not actionable as a matter of
                law ..................................................................................... 17

            c.    Defendants did not conceal the risk that NetBank could be shut
                down ................................................................................... 18

            d.    Plaintiff fails to plead facts establishing that Defendants acted with
                the required culpable mental state ................................................. 19

            e.    Plaintiff fails to plead facts demonstrating justifiable reliance ..................... 20

2.     Plaintiff's negligent misrepresentation claim also fails as a matter of law.............. 22

3.     Plaintiff's claim under New York General Business Law § 349 should be dismissed................................................................................................................. 23

4.     Plaintiff's allegations regarding renewal of his certificate of deposit fail to state any claim ................................................................................................... 24

IV.  CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

FEDERAL CASES

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) ...................................................................................19

*Adato v. Kagan*,
    599 F.2d 1111 (2d Cir. 1979).................................................................................9

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec.* LLC,
    254 F. Supp. 2d 373 (S.D.N.Y. 2003)..................................................................22

*Am. Gen. Life Ins. Co. v. Kleiner*,
    No 1:07-cv-0554-RLV, 2007 WL 4373977 (N.D. Ga. Dec. 11, 2007) ..................15

*Caputo v. Pfizer, Inc.*,
    267 F.3d 181 (2d Cir. 2001)................................................................................19

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ..............................................................................16

*Downriver Cmty. Fed. Credit Union v. Penn Square Bank*,
    879 F.2d 754 (10th Cir. 1989) ..........................................................................9, 12

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004)............................................................................13, 19

*Feeney v. Mego Mortgage Corp.*,
    45 F. Supp. 2d 1356 (N.D. Ga. 1999) .................................................................16

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
    500 F.3d 1276 (11th Cir. 2007) .......................................................................21-23

*Guildhall Ins. Co., Ltd. v. Silberman*,
    688 F. Supp. 910 (S.D.N.Y. 1988)......................................................................13

*Hamid v. Price Waterhouse*,
    51 F.3d 1411 (9th Cir. 1995) ................................................................................9

*Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*,
    No. 04 Civ 3318 (LAP), 2005 WL 736217 (S.D.N.Y. Mar. 30, 2005) ..................19

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)..................................................................................13

*Henneberry v. Sumitomo Corp. of Am.*,
No. 04 Civ 2128 (PKL), 2005 WL 991772 (S.D.N.Y. Apr. 27, 2005)...................................22

*In re Sunrise Sec. Litig.*,
916 F.2d 874 (3d Cir. 1990)............................................................................. 8, 10-12

*Learning Works, Inc. v. Learning Annex, Inc.*,
830 F.2d 541 (4th Cir. 1987) ...................................................................................21

*McAdams v. Greenberg Traurig, LLP*,
No. 1:06-cv-1778-JTC, 2007 WL 2310112 (N.D. Ga. Aug. 9, 2007)...................................15

*Michelsen v. Penney*,
10 F. Supp. 537 (S.D.N.Y. 1934)..................................................................................9

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*,
877 F.2d 1333 (7th Cir. 1989) ...................................................................................10

*Next Century Commc'ns Corp. v. Ellis*,
214 F. Supp. 2d 1366 (N.D. Ga. 2002), *aff'd* 318 F.3d 1023 (11th Cir. 2003) ................ 21-22

*Next Century Commc'ns Corp. v. Ellis*,
318 F.3d 1023 (11th Cir. 2003) ...................................................................... Passim

*Pareto v. FDIC*,
139 F.3d 696 (9th Cir. 1998) .......................................................................................9

*Prime Mgmt. Consulting & Inv. Servs., LLC v. Certain Underwriters at Lloyd's London*,
No. 1:07-cv-15787-WSD, 2007 WL 4592099 (N.D. Ga. Dec. 28, 2007) ...................... Passim

*Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc.*,
117 F. Supp. 2d 1357 (N.D. Ga. 2000) ........................................................................13

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)..........................................................................................4

*S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*,
84 F.3d 629 (2d Cir. 1996)....................................................................................23-24

*Sotheby's Fin. Servs. v. Baran*,
107 Fed. Appx. 235 (2d Cir. 2004)..............................................................................22

*Sussman v. Bank of Israel*,
801 F. Supp. 1068 (S.D.N.Y. 1992)..............................................................................13

*WESI, LLC v. Compass Envtl., Inc.*,
509 F. Supp. 2d 1353 (N.D. Ga. 2007*)*...........................................................13, 15, 19

*Womble v. Dixon*,
   752 F.2d 80 (4th Cir. 1984) ................................................................9

*Worsham v. Provident Cos.*,
   249 F. Supp. 2d 1325 (N.D. Ga. 2002) ..............................................13

**STATE CASES**

*Anderson v. Atlanta Comm. for the Olympic Games*,
   584 S.E.2d 16 (Ga. Ct. App. 2003) ...................................................21

*Equifax, Inc. v. 1600 Peachtree, L.L.C.*,
   601 S.E.2d 519 (Ga. App. 2004) .......................................................17

*Feinberg v. Federated Dep't Stores, Inc.*,
   832 N.Y.S.2d 760 (N.Y. App. Div. 2007) ..........................................23

*Green v. Perryman*,
   197 S.E. 880 (Ga. 1938) ...................................................................10

*Jackson v. Stallings*,
   149 S.E. 902 (Ga. 1929) ...................................................................10

*Newitt v. First Union Bank*,
   607 S.E.2d 188 (Ga. Ct. App. 2004) .................................................20

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   647 N.E.2d 741, 85 N.Y.2d 20 (N.Y. 1995) ......................................23

*Stutman v. Chemical Bank*,
   731 N.E.2d 608, 95 N.Y.2d 24 (N.Y. 2000) ......................................23

*Zanani v. Savad*,
   217 A.D.2d 696, 630 N.Y.S.2d 89 (N.Y. App. Div. 1995) ..................17

**STATE STATUTES**

New York General Business Law § 349 ......................................... Passim

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................... Passim

Fed. R. Civ. P. 12(b)(6) ..............................................................1, 25

## I.      INTRODUCTION

Plaintiff's Complaint asserts the untenable theory that he and others who had deposits with failed internet bank NetBank, FSB ("NetBank") in excess of the $100,000.00 amount insured by the Federal Deposit Insurance Corporation ("FDIC") at the time that NetBank was shut down by the regulators in September 2007 are entitled to recover their uninsured losses from the former CEO and current CFO of NetBank's parent company, NetBank, Inc. (hereinafter referred to as "NetBank, Inc." or the "Company").    Plaintiff claims that Defendants are responsible for $109 million in alleged uninsured losses suffered by depositors when NetBank shut down because Defendants purportedly "operated NetBank in the absence of and contrary to sound, proper and prudent banking practices."  Comp. ¶ 14.  Defendants move to dismiss under Federal Rule 12(b)(6) on two principal grounds:  (1) Plaintiff lacks standing -- because Plaintiff's injuries result from matters affecting **all** NetBank creditors, any claims here belong solely to NetBank's receiver, the FDIC;[1] and (2) Plaintiff has failed to sufficiently plead the elements of his claims required to state a claim on any of the counts alleged in the Complaint.

Plaintiff clearly lacks standing to pursue the claims he seeks to assert in this case.  The injury of which Plaintiff complains -- loss of claimed uninsured deposits when NetBank was shut down -- flows from NetBank's loss of assets and ultimate closure and thus cannot be separated from injury to NetBank itself and all other NetBank creditors.  Such claims belong to the FDIC as receiver to assert for the benefit of all creditors.  Plaintiff's fundamental claim -- that Defendants' alleged improper management of NetBank rendered NetBank insolvent and unable to pay its creditors -- is a classic derivative claim.  Defendants vigorously deny that any basis

---

[1] Since NetBank was shut down in September 2007, the FDIC has worked to identify, value, and liquidate NetBank assets with the goal of generating funds that have been and continue to be used to compensate depositors with deposits in excess of the insured amount.  As a result of the FDIC's efforts to date, depositors have been repaid 71.33% of uninsured losses (meaning that the $109 million dollar damages figure claimed by Plaintiff has already been reduced to just over $31 million).

exists for such a claim to be asserted against them, but regardless, as a matter of law such a claim may be brought only by the corporate entity that suffered the alleged injury directly, or, where applicable, its successor in interest.

Here, the relevant successor in interest is the FDIC, in its capacity as NetBank's receiver. As receiver, the FDIC succeeded to ownership of all NetBank assets, including any possible causes of action against past and present corporate officers for purported mismanagement or other wrongful conduct diminishing NetBank's assets and eventually rendering it unable to fully pay its depositors and other creditors. If there are claims to be brought against NetBank personnel or others to redress the alleged wrongs that Plaintiff seeks to vindicate, it is the province of the FDIC, not Plaintiff to bring such claims.

Plaintiff attempts to avoid his standing problems by styling certain counts of the Complaint as direct claims for fraud, negligent misrepresentation, and violation of New York General Business Law § 349. The labels Plaintiff attempts to apply to the counts asserted in the Complaint do not alter the derivative character of the claims and the injury for which Plaintiff seeks redress. Plaintiff cannot overcome his lack of standing to bring this lawsuit merely by styling certain counts as purported direct claims.

Further, Plaintiff's allegations fail to satisfy the pleading requirements of Rule 9(b) for pleading claims of fraud, and fail to state claims for negligent misrepresentation, and violation of § 349. While Plaintiff claims that Defendants deceived him and other depositors by falsely touting NetBank's "sound financial condition," the accuracy of NetBank Inc.'s consolidated financial statements, and the adequacy of its internal controls, Plaintiff alleges no facts establishing that any of the specific statements Plaintiff challenges was false or misleading when made. Instead, Plaintiff appears to contend that, simply because NetBank was ultimately shut

down, Defendants must have been lying about NetBank's financial condition all along.  Such conclusory and unsupported pleadings are legally insufficient to state claims for the causes of action Plaintiff seeks to pursue.  Moreover, many of the statements that Plaintiff challenges were statements of future projection, opinion, and hope, which are inactionable as a matter of law.

Furthermore, far from falsely touting the "sound financial condition" of NetBank and the "safety" of deposits as Plaintiff contends, many of the very statements Plaintiff challenges (together with additional public statements of which this Court may take notice in addressing Defendants' motion) clearly disclosed NetBank's struggles to maintain adequate capital to sustain operations well in advance of the September 2007 shut down.  Indeed, almost two months before NetBank was eventually shut down, NetBank, Inc. disclosed that regulators had determined that the bank was "undercapitalized" and ordered the Company to submit a satisfactory plan for restoring adequate capital within five weeks.  By then, one analyst following NetBank, Inc. had projected that the Company's stock would soon be worthless and the Company itself had stated that the stock "may have little or no value."

Plaintiff also fails to allege with the required factual particularity the scienter element of his fraud claim and the reliance elements of his claims for fraud, negligent misrepresentation, and violation of New York General Buiness Law § 349.  Indeed, in light of the clear warnings of NetBank's undercapitalization and the Company's own statement that its stock was essentially worthless weeks before the shut down giving rise to the injury complained of in this case, Plaintiff could not have reasonably relied on any alleged prior misstatement as a matter of law. Plaintiff's inability to show this required element is fatal to Plaintiff's claims of fraud, negligent misrepresentation, and violation of § 349.

For any and all of these reasons, and as described herein, Plaintiff's Complaint fails to state any claim for which relief can be granted and should be dismissed.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    NetBank's Struggles To Maintain Adequate Capital[2]

When Defendants assumed their positions as CEO and CFO of NetBank, Inc. in October 2006, it was widely known that NetBank was struggling financially. *See* Ex. E to Declaration of Lisa Albert ("Albert Decl.") (describing ongoing efforts "[s]ince the beginning of the year" to sell off underperforming business lines; stating that "[e]conomic and market conditions have weighed heavily on the company's performance" and "[o]ur main objective over the next three months will be to stabilize the company's operating profile and return to profitability as quickly as possible").[3]  On November 8, 2006, the Company issued a press release in which it reported, among other things, that the Company's board of directors had determined that "the company needed to make significant changes to its operating plan to return to profitability and protect capital" and that the Company had entered a supervisory agreement with the Office of Thrift Supervision ("OTS"),[4] regarding efforts to preserve capital and return to profitability after several quarters of losses.  *See* Albert Decl. Ex. F.; Compl., ¶¶ 10, 16(a) (referencing supervisory agreement with the OTS).

As alleged in the Complaint, throughout 2007, Defendants made additional disclosures communicating to the public the Company's struggles to maintain adequate capital to continue

---

[2]    Discussion of facts relating to the parties and relevant non-party entities is included in the contemporaneously filed Memorandum of Law in Support of Defendants' Motion to Dismiss (Lack of Personal Jurisdiction and Improper Venue).

[3]  The Court may consider publicly available documents that are integral to Plaintiff's claims of fraud but are not attached to the Complaint, including press releases, SEC filings, and other public records, in adjudicating the instant motion.  *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007).

[4]  The OTS is a bureau of the United States Department of the Treasury and the primary federal regulator of federally-chartered and state-chartered savings associations, their subsidiaries, and their registered savings and loan holding companies.  *See* OTS website, http://www.ots.treas.gov/.

operations. *See* Compl., ¶ 16(b) ("***We believe the additional capital*** [from sale or exit of underperforming business lines] ***will allow us to maintain optimal capitalization*** within the bank.") (emphasis added) (quoting January 8, 2007 release); Compl., ¶ 16(c) (discussing a "restructuring plan ***designed to stabilize the company's operating profile and capital position***.") (emphasis added) (quoting February 21, 2007 release that also cited a need for "dramatic changes" as the result of "[m]arket and economic pressures" and the Company's "poor financial performance"); Compl., ¶ 16(d) (sale of ATM and merchant servicing operation "will prove important in our ***effort to maintain proper regulatory capital ratio[s]*** . . . .") (emphasis added) (quoting May 1, 2007 release that continued ". . . and to protect shareholder value ***as we fight to get the company back on track financially through further restructuring or other alternatives***.") (emphasis added).

On May 21, 2007, the Company announced an anticipated transaction in which $2.5 billion of NetBank's deposit liabilities would be transferred to EverBank, a federal savings bank and subsidiary of EverBank Financial Corp. Compl., ¶ 16(e); *See* Albert Decl. Ex. G. The press release made clear that the transaction remained "subject to regulatory approval" and explained that the Company had pursued the transaction due to regulators' concerns "about [NetBank's] capital and earnings trends" and admonition that the Company needed "to find an alternative immediately that covered all of the bank's deposit obligations." *Id.* Although Herbert stated that the anticipated transaction would "allow the bank to fulfill all of its deposit liabilities," he also confirmed that "[i]n spite of our best efforts to improve the company's operating profile through the restructuring plan we undertook last year, ***our company has remained very vulnerable and at risk due to the weakened fundamentals of our core business***." *Id.* (emphasis added). The

very next day, one analyst following NetBank. Inc.'s stock downgraded the stock, slashing his target price to zero and saying that NetBank would soon be "worthless." *See* Albert Decl. Ex. H.

Thereafter, as the Complaint alleges, on August 6, 2007, NetBank, Inc. filed a Form 8-K with the Securities and Exchange Commission ("SEC") announcing that the Company had received notice that the OTS had determined that NetBank was "undercapitalized" and was "required to file a capital restoration plan with the OTS by no later than September 13, 2007." *See* Compl., ¶ 17; Albert Decl. Ex. I.  The Form 8-K also reported that "[a]s a result of the Company's obligations under the Notice, the Company believes that its outstanding common stock may have little or no value." *Id.*

On September 17, 2007, the Company filed another Form 8-K reporting that the anticipated transaction with EverBank had not received the required regulatory approvals, that EverBank had advised NetBank that EverBank was terminating the transaction, and that NetBank did not intend to contest the termination.  *See* Albert Decl. Ex. J.

### B.    The September 2007 Shut-Down Of NetBank And FDIC Receivership

On September 28, 2007, NetBank was closed by the OTS, and the FDIC was named as NetBank's receiver.  *Id.*  Funds on deposit with NetBank up to $100,000.00 at the time of the shut down were insured by the FDIC, and depositors have had continuous access to their insured deposits since the shut down.  *See* FDIC Press Release PR-81-2007, *available at* http://www.fdic.gov/news/news/press/2007/pr07081.html, copy attached as Albert Decl. Ex. K. Depositors with deposits in excess of the $100,000.00 FDIC insured amount became creditors of the receivership for the amounts of their uninsured deposits.  *Id.*

At the time of the shut-down, NetBank had approximately $109 million in 1,500 deposit accounts that exceeded the federal deposit insurance limit.  *Id.*; Compl., ¶ 23.  Since being appointed receiver, the FDIC has worked to liquidate NetBank assets in order to generate funds

to pay back to depositors portions of their uninsured deposits. *See* FDIC Dividend History (NetBank) *available at* http://www2.fdic.gov/DIVWEB/Dividendindex.asp?finnum=10001, copy attached as Albert Decl. Ex. L. The FDIC has made two dividend payments to uninsured depositors to compensate them for portions of their uninsured deposits. *Id*. The first such dividend payment, paid on September 30, 2007, returned to uninsured depositors 50% of their uninsured deposits. *See* Albert Decl. Exs. K & L. The second dividend, paid on December 18, 2007, returned to uninsured depositors an additional 21.333% of their uninsured deposits, bringing the total recovery to uninsured depositors to date as the result of the FDIC's efforts to 71.333% (or $77.7 million) of the initial $109 million in uninsured deposits. Albert Decl. Ex. L.

### C.    Plaintiff's Allegations

Plaintiff seeks to assert claims on behalf of a putative class of NetBank depositors who had deposits in excess of the $100,000.00 amount insured by the FDIC on September 28, 2007. Compl., ¶ 1. According to the Complaint, NetBank's failure and uninsured depositors' loss of portions of their deposits was caused by Defendants' operation of NetBank "in the absence of and contrary to sound, proper and prudent banking practices." Comp. ¶ 14; *see also, e.g.* ¶¶ 1, 15-16; 35, 38. Plaintiff also alleges that Defendants deceived him and other depositors by making or endorsing statements included in NetBank, Inc.'s SEC filings and press releases that, according to Plaintiff, concealed Defendants' alleged operation of NetBank "in the absence of and contrary to sound, proper and prudent banking practices and without meeting regulatory capital requirements." *E.g., Id.* ¶¶ 2, 3, 14-16. On the basis of the conduct alleged in the Complaint, Plaintiff seeks to assert claims of negligence, fraud, negligent misrepresentation, and violation of New York General Business Law § 349.

## III.    ARGUMENT AND CITATION OF AUTHORITIES

### A.    Point One -- Plaintiff Lacks Standing To Prosecute The Claims He Seeks To Assert

#### 1.    Plaintiff's claims are derivative and may be brought, if at all, only by the FDIC

The alleged injury for which Plaintiff seeks redress in this action is the claimed loss of funds on deposit with NetBank in excess of FDIC-insured limits when the bank was shut down in September 2007.  Plaintiff seeks to lay blame for the alleged losses at the feet of Defendants, claiming that it was their alleged operation of NetBank "without regard for, and in violation of, proper and prudent banking business practices" that placed the uninsured funds "at great peril." Compl., ¶ 14; *see also* ¶¶ 1, 15-16.  Defendants vigorously deny that they are responsible for NetBank's failure or Plaintiff's claimed losses.  There is no dispute, however, that the losses alleged by Plaintiff were suffered because NetBank became undercapitalized and ultimately was shut down, thus (at least temporarily) depriving certain depositors of portions of their uninsured deposits.  Plaintiff's claims thus do not arise from a direct injury that he sustained independently of other NetBank depositors and creditors; rather Plaintiff's claims arise from a claimed injury that is derivative of injury to NetBank itself in the first instance and that was shared alike by all NetBank depositors and creditors.

Such claims are derivative in nature and belong in the first instance to the entity that suffered the direct injury, in this case NetBank, or its successor in interest, here the FDIC.  *See* 1 MICHIE ON BANKS AND BANKING, § 69 (1999) ("[W]here the amount for which the officers and directors [or a failed bank] may be liable results from matters affecting all creditors, [the claims] constitute assets of the corporation for the benefit of all depositors and creditors, and suit therefor must be brought by the bank or its receiver.").  Numerous courts have recognized this principle. *See, e.g., In re Sunrise Sec. Litig.*, 916 F.2d 874, 883 (3d Cir. 1990) (uninsured depositors'

claims against former officers of failed financial institution belonged to the institution itself and could only be asserted by the FDIC; the "depositors' loss cannot be separated from the injury suffered by the institutions and all other depositors, and the damages recoverable are assets of the institutions"); *see also Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979) ("As a general rule, wrongdoing by bank officers that adversely affects all depositors creates a liability which is an asset of the bank, and only the bank or its receiver may sue for its recovery.");[5] *Michelsen v. Penney*, 10 F. Supp. 537, 549 (S.D.N.Y. 1934) ("The damage done by a director's misfeasance or nonfeasance is damage to the Bank and is generally made the subject-matter of litigation in a suit brought by the Bank or its receiver."); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1420-21 (9th Cir. 1995) (dismissing depositor's claims against failed bank officers and directors, noting that only the bank or its receiver could assert those claims); *Downriver Cmty. Fed. Credit Union v. Penn Square Bank,* 879 F.2d 754, 764-65 (10th Cir. 1989) (uninsured depositors could not seek remedy against insolvent bank or related entities; such claims "belong[] to the receiver, who asserts such claims for the benefit of all creditors"); *c.f. Womble v. Dixon*, 752 F.2d 80, 82 (4th Cir. 1984) (dismissing shareholder action against directors and officers of failed bank institution; "[c]laims against the officers and directors for harm to the corporation are vested in the receiver, who is asserting them on behalf of the corporation"); *Pareto v. FDIC*, 139 F.3d 696, 701 (9th Cir. 1998) (power to bring derivative claims in respect of a failed financial institution is vested exclusively in the FDIC).[6]

---

[5]  In *Adato,* appellants' had not been recorded as "deposits" in a failed commercial bank, but rather as investments in securities of bank-affiliated entities.  599 F.2d at 114-15, 1117.  Moreover, the FDIC had taken the position that appellants should not be treated as depositors for purposes of sharing in any recovery obtained by the FDIC.  *Id.* at 1117.  On those unique facts, the Court of Appeals held that appellants' claim was "not common to those of other depositors whose interests are represented by the FDIC" and could be asserted directly against appellees.  *Id.*

[6]  Although headquartered in Alpharetta, Georgia, NetBank was chartered under United States law.  *See* Albert Decl. Ex. A, ¶ 3.  Defendants are alleged to have been executives of Georgia incorporated and

Indeed, it is a bedrock principle of the law relating to all business organizations that such derivative claims are owned by the business organization that directly suffers the injury sought to be redressed -- not by third parties who might have been injured indirectly through their relationship with the injured entity. Close adherence to this principle is especially important in contexts involving claims relating to a failed financial institution. As the Seventh Circuit noted in a case dismissing claims of borrowers and guarantors against a failed lender:

> Good reasons account for the enduring distinction between direct and derivative injury. When the injury is derivative, recovery by the indirectly-injured person is a form of double counting. "Corporation" is but a collective noun for real people -- investors, employers, suppliers with contract rights and others. A blow that costs "the firm" $100 injures one or more of those persons. If, however, we allow the corporation to litigate in its own name and collect the whole sum (as we do), we must exclude attempts by the participants in the venture to recover for their individual injuries . . . . ***Recovery by the firm, followed by division according to entitlements, is especially important when the firm has landed in bankruptcy. Suits by shareholders, guarantors, and the like may well be efforts to divert the debtor's assets -- to pay off one set of creditors . . . while keeping the proceeds out of the hands of the firm's other creditors.***

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1335-36 (7th Cir. 1989) (emphasis added). *Compare, In re Sunrise Sec. Litig.,* 916 F. 2d at 887 ("The alternative, permitting depositors to bring individual actions for such injuries, would invariably impair the rights of other general creditors and claimants with superior interests.").

That Plaintiff and the uninsured depositors lack standing to bring these claims directly hardly leaves them without recourse. Indeed, when a financial institution fails, it is the prerogative of the FDIC as receiver to divide NetBank's existing assets (and, if warranted, to

---

headquartered NetBank, Inc. *See* Compl., ¶¶ 2, 3. Georgia law is in accord with the above cited authorities concerning assertion of claims against officers of failed financial institutions. *See, e.g., Jackson v. Stallings,* 149 S.E. 902, 904 (Ga. 1929) (dismissing depositor's claims against officers and directors of failed bank, holding that these claims could be pursued by the superintendent of banks, the successor in interest to the bank's claims); *Green v. Perryman,* 197 S.E. 880, 885 (Ga. 1938) (dismissing depositors' claim against bank officers, holding that "[f]or any such negligence or breach of duty they would have been liable, not directly to the plaintiffs, but only to the Bank itself, and the superintendent of banks would ordinarily have been the proper party to sue").

pursue claims to benefit depositors and other creditors) to attempt to compensate injured persons for losses sustained.  Here, that very process has already yielded a 71.33% recovery of deposits above the insured amount, and the FDIC has not yet completed its work.[7]

**2.    The labels Plaintiff seeks to apply to his claims do not permit an end-run on the FDIC's prerogative with respect to the claims asserted here**

Plainly, the FDIC's prerogative with respect to assertion of claims for the benefit of all creditors arising from NetBank's failure plainly bars Plaintiff's negligence claim, which is indisputably derivative and therefore the FDIC's to assert or not as it sees fit.  While facially styled as direct claims, Plaintiff's remaining claims -- for fraud, negligent misrepresentation, and violation of the New York General Business Law § 349 -- also ultimately challenge Defendants' management of NetBank.  Indeed, according to Plaintiff, all of the statements challenged in the Complaint were purportedly false, deceptive, or negligent simply because Defendants allegedly failed to "tell Plaintiff . . . that NetBank and the Company lacked sufficient and adequate assets and capital to protect and repay on demand the deposits made by Plaintiff and the members of the class."  *See* Compl., ¶ 19; *see also* ¶¶ 2, 3, 14, 15, 16.  In other words, Plaintiff contends that the statements he challenges were false or misleading because they did not convey the alleged mismanagement of NetBank.  All of Plaintiff's claims are founded on the same theory of mismanagement and seek to recover for alleged injury common to all NetBank depositors and creditors.  Regardless of their labels, these claims are undeniably derivative and may be asserted only by the FDIC.

In language uniquely applicable to this case, the Third Circuit has held:

> ***Although the allegations are cast in terms of defendants'
> misrepresentation of and failure to disclose information, we believe that***

---

[7]   In addition, depositors may make demand on the FDIC that it pursue claims against directors and officers of the failed institution if such claims are warranted, and if demand is refused, then the depositors may bring a derivative action at that time.  *See In re Sunrise Sec. Litig.,* 916 F.2d at 889.

> ***under the distinct circumstances of this case, such allegations do not state a claim of direct injury founded on fraud.*** *The essence of the complaint is that defendants misrepresented the financial condition of Old Sunrise by failing to disclose that they had mismanaged Old Sunrise rendering the institution insolvent,* and that they had employed deceptive operating practices, which prevented federal and state regulators from acting in a timely manner to forestall the insolvency of Old Sunrise. Defendants' mismanagement and wrongdoing brought about the insolvency of Old Sunrise and may have contributed to the insolvency of New Sunrise, thus injuring the depositors indirectly. ***The asserted injury emanated from mismanagement, not fraud. Furthermore, in this case, the depositors' loss cannot be separated from the injury suffered by the institutions and all other depositors, and the damages recoverable are assets of the institutions.***

*In re Sunrise,* 916 F.2d at 883 (emphasis added); *see also Downriver,* 879 F.2d at 764 ("Any remedy for fraudulent representations that affects, or potentially affects, all creditors belongs to the receiver, who asserts such claim for the benefit of all creditors."). Appropriate consideration of the substance rather than the labels that Plaintiff gives its claims compels the conclusion that all of Plaintiff's claims are derivative in nature and that Plaintiff lacks standing to pursue any of them directly. *See In re Sunrise,* 916 F.2d at 883.

### B. Point Two -- Plaintiff Fails To Sufficiently Allege The Elements Required To State A Claim On Any Of His Purported "Direct" Counts

In addition to lacking standing to bring the claims that he seeks to pursue, Plaintiff fails to sufficiently allege the elements required to state a claim of fraud, negligent misrepresentation, or violation of New York General Business Law § 349.

#### 1. Plaintiff fails to state a claim for fraud

In order to state a fraud claim, Plaintiff must allege: (1) a false representation by the defendant; (2) scienter, or knowledge of falsity; (3) an intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff proximately caused by the reliance. *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027

(11th Cir. 2003); *Worsham v. Provident Cos.,* 249 F. Supp. 2d 1325, 1331 (N.D. Ga. 2002).[8] Federal Rule of Civil Procedure 9(b)'s heightened requirements for pleading the elements of fraud also apply. *Next Century*, 318 F.3d at 1027 n.1 (Fed. R. Civ. P. 9(b) applies to claim for fraud under state law asserted in federal court); *Eternity Global*, 375 F.3d at 187 (same).

Under Rule 9(b), a party must state with particularity "the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *WESI, LLC v. Compass Envtl., Inc.,* 509 F. Supp. 2d 1353, 1358 (N.D. Ga. 2007*)*. "Rule 9(b) requires plaintiffs in a fraud case to specify the who, what, where, when, why and how of the alleged fraud." *Id*. In particular, Plaintiff must plead facts sufficient to establish the falsity of each challenged statement. *See Prime Mgmt. Consulting & Inv. Servs., LLC v. Certain Underwriters at Lloyd's London*, No. 1:07-cv-15787-WSD, 2007 WL 4592099, at *6 (N.D. Ga. Dec. 28, 2007) (A fraud claim must set forth precisely the "manner in which [the challenged statements] misled the plaintiff."); *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir. 1996) (to state a claim for fraud under Rule 9(b), a complaint "must explain why the statements (or omissions) are fraudulent."). Plaintiff must also plead the remaining elements of fraud, including in particular "scienter" -- the knowledge element of a fraud claim -- and reliance, with particularity. *See Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc.,* 117 F. Supp. 2d 1357, 1360 (N.D. Ga. 2000) (each element of a fraud claim "must be stated with particularity.").

---

[8]  Georgia substantive law is applicable to Plaintiff's fraud and negligent misrepresentation claims, since NetBank, Inc. was headquartered in Georgia and all of the statements alleged to be fraudulent were issued on NetBank, Inc.'s behalf from Georgia. *See Sussman v. Bank of Israel*, 801 F. Supp. 1068 (S.D.N.Y. 1992) (law of state where alleged fraudulent acts occurred controls; not law of state where the plaintiff allegedly suffered economic loss); *see also Guildhall Ins. Co., Ltd. v. Silberman*, 688 F. Supp. 910, 912-13 (S.D.N.Y. 1988) (law of state where fraudulent statements were issued controls). In any event, New York law is to like effect. *See Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004) (stating elements of fraud claim under New York law).

### a. Plaintiff fails to allege with the required particularity that the challenged statements were false

Although Plaintiff repeatedly accuses Defendants of "falsely attesting to, *inter alia,* the sound financial condition of the Company and NetBank, the accuracy of their consolidated financial statements, and the adequacy of their internal financial controls," and otherwise generally deceiving depositors as to NetBank's financial condition, *e.g.* Compl., ¶¶ 2, 3, 14, 15, 16, 30-31, 40, 42 the Complaint is devoid of allegations of fact explaining how the few statements Plaintiff cites as purportedly fraudulent were in fact false or misleading when made.

For example, Plaintiff states that, in NetBank, Inc.'s Form 10-Q for the quarter ended September 30, 2006, Defendants "falsely certified that NetBank and the Company operated with effective internal control over financial reporting and falsely and negligently stated and represented to the public that NetBank and the Company had, *inter alia*, sufficient and adequate financial capital and assets to assure the security and safety of all deposits in NetBank." *Id*. ¶ 15. However, Plaintiff fails to specifically identify the particular statements by Defendants allegedly conveying these purported false "certifications." This alone is a sufficient reason to dismiss any fraud claim based on such alleged (but unidentified) statements. *See Prime Mgmt.,* 2007 WL 4592099, at *6 (A fraud claim must set forth precisely the "content of such statements and the manner in which they misled the plaintiff."). Moreover, Plaintiff pleads no facts whatsoever to establish that any such alleged "certifications" or statements were false when made. Plaintiff does not plead facts establishing that NetBank in fact lacked "effective internal control over financial reporting" or "sufficient and adequate financial capital and assets to assure the security and safety of all deposits in NetBank" at the time of the alleged statements. Accordingly, Plaintiff has not stated a claim for fraud based on these alleged statements. *See Prime Mgmt.*, 2007 WL 4592099 at *7 (dismissing fraud claims where as here, plaintiff failed to allege "facts

14

showing why those representations and omissions were false."); *McAdams v. Greenberg Traurig, LLP,* No. 1:06-cv-1778-JTC, 2007 WL 2310112, at *5 (N.D. Ga. Aug. 9, 2007) (allegations that "generally point to 'false and misleading' press releases and SEC filings*, . . .* but never identify . . . why any such statements were false or misleading" fail to state a claim).

Plaintiff's allegation that Defendants caused the Company to file a Form 8-K with the SEC "in which they falsely and negligently stated that the only weakness in internal control found by the Company's auditor at December 31, 2004 had been corrected in 2005," Compl.,¶ 15, fails for the same reasons. Again, Plaintiff fails to plead enough factual detail even to identify the challenged statement as required by 9(b). *See WESI,* 509 F. Supp. 2d at 1358 ("Rule 9(b) requires plaintiffs in a fraud case to specify the who, what, where, when, why and how of the alleged fraud."); *Prime Mgmt.,* 2007 WL 4592099, at *7. Nor does Plaintiff identify what internal control weakness was found by the Company's auditor or allege any facts to demonstrate that the internal control weakness was not corrected in 2005 as the Form 8-K allegedly claimed. "Absent any such particularity with respect to precisely how the defendants' statements were false or misleading, it cannot be said that the defendants have been put on notice of precisely what was fraudulent." *Am. Gen. Life Ins. Co. v. Kleiner*, No 1:07-cv-0554-RLV, 2007 WL 4373977, at *2 (N.D. Ga. Dec. 11, 2007) (dismissing fraud claim for failure to satisfy Rule 9(b)).

Even where the Complaint arguably succeeds in specifying which statements it is challenging, it lacks the required factual allegations explaining why such statements were supposedly false or misleading when made. Thus, while Plaintiff challenges a November 8, 2006 press release stating that NetBank, Inc. would implement "specific strategies and actions the board will take to improve the bank's performance and to ensure proper practices in critical

areas of operation and compliance," Compl., ¶ 16(a), Plaintiff alleges no facts establishing that the Company did not in fact implement operational changes to attempt to sustain profitability. Likewise, Plaintiff fails to plead any factual support whatsoever for his claims that other identified statements were false or misleading when made. Herbert's alleged January 8, 2007 statement that "[w]e believe the additional capital [from a $6.5 million private placement of stock] will allow us to maintain optimal capitalization within the bank," Compl., ¶ 16(b), is an inactionable statement of future opinion, *see infra,* at 17-18. Moreover, Plaintiff has failed to plead a single fact to suggest that Herbert did not in fact believe that the additional capital would permit NetBank to maintain optimal capitalization. Plaintiff also fails to explain how additional alleged statements Defendants made in Company press releases were false and misleading. *See* Compl., ¶ 16(c) ("the worst of the non-conforming loan repurchase program is now behind the company," and "I'm proud of the fact that, in the span of 90 days, we were able to substantially execute a restructuring plan designed to stabilize the company's operating profile and capital position."); ¶ 16(d) ("we have generated significant new tangible capital. This money will prove important in our effort to maintain proper regulatory capital ratio…"). Instead, Plaintiff appears to rely solely on the fact that NetBank ultimately became undercapitalized and was forced to close as the basis for the claim that prior statements were fraudulent. Such "fraud by hindsight" pleading is insufficient. *See, e.g. DiLeo v. Ernst & Young,* 901 F.2d 624, 628 (7th Cir. 1990). To state a claim of fraud, Plaintiff is required to "set forth specific facts that show what the defendants knew, how they knew it, and when they knew it." *Feeney v. Mego Mortgage Corp.*, 45 F. Supp. 2d 1356, 1357 (N.D. Ga. 1999). Plaintiff's bare-bones fraud allegations fall well short of this requirement and must be dismissed.

**b. Most of the challenged statements merely state opinions or predictions about future events and are not actionable as a matter of law**

Plaintiff's fraud claim also fails to the extent that the claim is based largely on inactionable statements of future promises or opinions. Georgia and New York courts have overwhelmingly held that "a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. *Fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjecture as to future events*." *Next Century*, 318 F.3d at 1027 (emphasis added) (*quoting Fuller v. Perry*, 476 S.E.2d 793 (Ga. 1996)); *Zanani v. Savad*, 217 A.D.2d 696, 696-97, 630 N.Y.S.2d 89 (N.Y. App. Div. 1995) ("[A] representation of opinion or a prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud."); *see also Equifax, Inc. v. 1600 Peachtree, L.L.C.*, 601 S.E.2d 519, 525-26 (Ga. App. 2004) ("The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made.").

In *Next Century*, the Eleventh Circuit held that the statement that "I think our share price will start to stabilize," was not actionable under a fraud theory because "it is framed as a mere opinion as to future events." 318 F.3d at 1028. Most of the statements challenged in the Complaint are mere opinions or predictions and cannot form the basis for a fraud claim. *See* Compl., ¶ 16(b) ("[w]e believe the additional capital will allow us to maintain optimal capitalization within the bank"); ¶ 16(e) (proposed sale to EverBank "will allow the bank to fulfill all of its deposit liabilities"); ¶ 16(d) ("we have generated significant new tangible capital. This money will prove important in our effort to maintain proper regulatory capital ratio."); *see also* ¶ 16(c) (discussing "restructuring plan *designed to* stabilize the company's operating profile and capital position") (emphasis added). Such opinions or predictions about future events cannot

17

form the basis for a fraud claim, and Plaintiff's fraud claim fails as a matter of law to the extent premised on these alleged statements. *See Next Century*, 318 F.3d at 1027-28.

### c. Defendants did not conceal the risk that NetBank could be shut down

Furthermore, to the extent that Plaintiff is seeking to assert that Defendants defrauded Plaintiff and other depositors by concealing the risk that NetBank could be shut down and portions of uninsured deposits lost, any such claim is belied by Plaintiff's own allegations. As discussed *supra,* at 6, on August 6, 2007, nearly two months before the September 28, 2007 shut down, NetBank, Inc. filed a Form 8-K disclosing that the OTS had determined that NetBank was "undercapitalized" and was "required to file a capital restoration plan with the OTS by no later than September 13, 2007." *See* Albert Decl. Ex. J. In the same Form 8-K NetBank, Inc. stated further that "[a]s a result of the Company's obligations under the Notice, ***the Company believes that its outstanding common stock may have little or no value***." *Id.* (emphasis added).

These candid disclosures of NetBank's precarious financial position almost two months before the shut down came in the wake of additional warning disclosures, including that: (1) "[i]n spite of our best efforts to improve the company's operating profile through the restructuring plan we undertook last year, ***our company has remained very vulnerable and at risk due to the weakened fundamentals of our core business***," Albert Decl. Ex. G (emphasis added); (2) NetBank was having to "***fight to get the company back on track financially*** through further restructuring or other alternatives," Albert Decl. Ex. M (emphasis added); and (3) that "[m]arket and economic pressures" and the Company's "poor financial performance," had required "dramatic changes" and a "restructuring plan designed to stabilize the company's operating profile and capital position," Albert Decl. Ex. N; and additional publicity relating to one analyst's conclusion that NetBank, Inc.'s stock was worthless. *See* Albert Decl. Ex. H. Any

claim that Defendants concealed risks relating to NetBank's ability to continue operations fails on the face of the Complaint.

### d. Plaintiff fails to plead facts establishing that Defendants acted with the required culpable mental state

Plaintiff also fails to allege with the required factual particularity that Defendants made any of the challenged statements with knowledge that the statements were false or with the intent to deceive.  "Knowledge of falsity is an essential element in a cause of action for deceit based upon fraud."  *WESI*, 509 F. Supp. 2d at 1358-59; *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (fraud complaint must plead facts "which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth").[9]  Plaintiff pleads only conclusory assertions that "Defendant Herbert and defendant Gross each acted with scienter and each understood that his and their fraudulent conduct was enabling NetBank to continue to operate and attract depositors . . . ."  Compl., ¶ 41.  Such "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)]."  *WESI*, 509 F. Supp. 2d at 1358 (*quoting Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 549 (8th Cir. 1997)).  Plaintiff fails to plead facts explaining how Defendants supposedly "acted with scienter" or knew that their alleged statements were false.  Plaintiff's fraud claim thus fails for this reason as well.  *Id.* at 1359 (dismissing fraud claim for failure to plead scienter); *Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, No. 04 Civ 3318 (LAP), 2005 WL 736217, at *4 (S.D.N.Y. Mar. 30, 2005) (dismissing investor's fraud claims; stating that "[t]he Complaint also fails adequately to plead scienter because it does not contain any specific facts giving rise to a strong inference that any challenged statement was knowingly

---

[9]  The Second Circuit Court of Appeals has held that under Rule 9(b) "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent."  *See Eternity Global*, 375 F.3d at 187; *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).

false when made . . . .  There is no basis, therefore, to draw any inference that Defendants made the allegedly fraudulent statements knowing they were false.").  Plaintiff's failure to adequately plead scienter requires dismissal.

### e.  Plaintiff fails to plead facts demonstrating justifiable reliance

Plaintiff also fails to sufficiently allege the reliance element of his fraud claim.  Rather than pleading facts demonstrating that Plaintiff in fact relied on any of the challenged statements, the Complaint simply alleges "Plaintiff and members of the Class reasonably relied upon the fraudulent conduct of defendant Herbert and defendant Gross, including, *inter alia*, their false and misleading certifications . . . in making their decisions to deposit their funds in NetBank in excess of FDIC insurance limits."  Compl., ¶ 42.  Such conclusory and unsupported allegations of reliance are insufficient  *Prime Mgmt.*, 2007 WL 4592099, at *7 (dismissing fraud claim where similar to here, the complaint merely stated "Defendant's misrepresentations and concealments were made with the intention of inducing reliance . . . and [plaintiff] justifiably relied").  The Complaint's absence of specific factual allegations establishing that Plaintiff in fact considered or relied on the statements alleged to be fraudulent requires dismissal.  *Id.* at *8 (dismissing fraud count where plaintiff "d[id] not allege any facts showing how it actually relied on the statement").

Indeed, by no later than August 6, 2007 -- when NetBank, Inc. announced that (1) the OTS had determined that NetBank was "undercapitalized" and "was required to file a capital restoration plan with the OTS by no later than September 13, 2007"; and (2) that NetBank, Inc. "believe[d] that its outstanding common stock may have little or no value" -- it became unreasonable as a matter of law for Plaintiff to have relied on any alleged prior assurances of the safety and security of deposits.  *See Newitt v. First Union Bank*, 607 S.E.2d 188, 195 (Ga. Ct. App. 2004) (dismissing fraud claim and holding "an investor may not justifiably rely on a

representation if, through minimal diligence, the investor should have discovered the truth."). By August 6, 2007, *more than seven weeks before the shut down*, NetBank, Inc. and Defendants (among others) had provided more than adequate warning of a substantial risk of imminent failure. And any hope that depositors might have held that NetBank's deposit liabilities would be assumed by EverBank, and thereby safeguarded notwithstanding NetBank's undercapitalization, was conclusively put to rest on September 17, 2007, when NetBank announced that EverBank had terminated the anticipated transaction. Albert Decl. Ex. J.

In light of these prevalent warnings, Plaintiff's failure to reduce his deposits with NetBank to an amount within the FDIC insured limit was unreasonable as a matter of law and compels the conclusion that the reliance element of Plaintiff's fraud claim cannot be satisfied. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1289 (11th Cir. 2007) ("[T]o establish reasonable reliance under Georgia law as to either fraud or negligent misrepresentation, a plaintiff must show that it exercised due diligence."); *see also Next Century Commc'ns Corp. v. Ellis*, 214 F. Supp. 2d 1366, 1370 (N.D. Ga. 2002) (plaintiff's failure to allege fats supporting justifiable reliance warranted dismissal of fraud and negligent misrepresentation claims) *aff'd* 318 F.3d 1023 (11th Cir. 2003); *Learning Works, Inc. v. Learning Annex, Inc.,* 830 F.2d 541, 545-46 (4th Cir. 1987) (affirming dismissal of fraud claims where complaint failed to allege facts demonstrating reasonable reliance). Further, as a matter of law, Plaintiff could not have been justified in relying on any of the statements of opinion or prediction regarding future events challenged in the Complaint at ¶¶ 16(b) - (e). *Next Century*, 214 F. Supp. 2d at 1371 ("A party's reliance on another's predictions of a future event is not justifiable as a matter of law") *aff'd* 318 F.3d 1023 (11th Cir. 2003); *Anderson v. Atlanta Comm. for the Olympic Games*, 584 S.E.2d 16, 21 (Ga. Ct. App. 2003) (statements "of opinion, hope, and expectation . . . were not statements of

fact upon which the appellants could have justifiably relied"). Plaintiff's failure to plead reliance requires dismissal of the fraud claim. *See Next Century*, 214 F. Supp. 2d at 1370.

### 2. Plaintiff's negligent misrepresentation claim also fails as a matter of law

The essential elements of a claim for negligent misrepresentation are: (1) the defendant's negligent supply of false information to foreseeable persons; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance. *See Next Century*, 318 F.3d at 1030.[10] Like fraud, a claim for negligent misrepresentation cannot rest on opinions or future promises. *See Next Century*, 214 F. Supp. 2d at 1372 (dismissing negligent misrepresentation claims because "it is elementary that no one has a right to rely on a statement of another as to what could and would take place in the future."); *Sotheby's Fin. Servs. v. Baran*, 107 Fed. Appx. 235, 238 (2d Cir. 2004) ("It is well established that conclusory representations or those that constitute . . . ***future expectations cannot form the basis of a claim for negligent misrepresentation.***") (emphasis added). Thus, any claims based on the statements of opinion or prediction regarding future events challenged in the Complaint at ¶¶ 16(b) - (e) fail.

Moreover, as discussed at length above, the Complaint fails to allege facts showing that any of the challenged statements was false. The negligent misrepresentation count fails for this reason as well and should be dismissed. *See Fin. Sec. Assur., Inc.*, 500 F.3d at 1290 (In order to plead a claim for negligent misrepresentation, "a plaintiff must establish that the defendant made false representations on which the plaintiff justifiably relied."). Plaintiff's claim also fails

---

[10] New York courts have held that due to the similarities between fraud and negligent misrepresentation claims, Rule 9(b)'s particularity requirements are also applicable to a claim for negligent misrepresentation. *See Henneberry v. Sumitomo Corp. of Am.*, No. 04 Civ 2128 (PKL), 2005 WL 991772, at *10 (S.D.N.Y. Apr. 27, 2005) ("The particularity requirements of Rule 9(b) apply to claims for negligent misrepresentation.") (internal quotations and citations omitted); *see also AIG Global Sec. Lending Corp. v. Banc of Am. Sec.* LLC, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003).

because Plaintiff has not adequately pled reliance on any alleged misrepresentation. *Next Century*, 318 F.3d at 1380 ("[T]he reasonable reliance that is required to state a negligent misrepresentation claim is equivalent to that needed in the fraud context"); *Fin. Sec. Assur., Inc.*, 500 F.3d at 1289. As with his fraud claim, Plaintiff merely states that "Plaintiff . . . reasonably relied upon Defendants' statements concerning the operations and financial condition of NetBank." Compl., ¶ 31. Such conclusory recitations of the elements of a cause of action are insufficient as a matter of law. *See Prime Mgmt.*, 2007 WL 4592099 at *7.

### 3. Plaintiff's claim under New York General Business Law § 349 should be dismissed

To state a claim under § 349 Plaintiff must allege "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611, 95 N.Y.2d 24, 29 (N.Y. 2000) (dismissing claim under section 349 because plaintiff failed to show that defendant committed a deceptive act); *see also S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) (same). To avoid the potential "for a tidal wave of litigation against businesses," a result clearly not intended by providing a private right of action to remedy deceptive practices, the New York Court of Appeals has imposed an "objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745, 85 N.Y.2d 20, 26 (N.Y. 1995). Therefore, an act is deceptive only if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.*; *see also Feinberg v. Federated Dep't Stores, Inc.*, 832 N.Y.S.2d 760, 766 (N.Y. App. Div. 2007) (dismissing plaintiff's claim under § 349, which was "designed to protect the little guy from false

advertising pyramid schemes, bait-and-switch sales tactics, and other mischievous machinations by swindlers and scallywags").

Here, Plaintiff has not alleged a deceptive act or practice on which a claim under § 349 could be based. As described above, Plaintiff has not identified with the requisite specificity a single false or misleading representation by Defendants. Indeed, Defendants made extensive and repeated disclosures during 2006 and 2007 that NetBank was struggling to maintain adequate capitalization and was financially "at risk," including the Company's August 6, 2007 disclosure that the OTS had determined that NetBank was "undercapitalized" and that NetBank, Inc.'s stock "may have little or no value." Albert Decl. Ex. I. In light of the ample public warnings regarding NetBank's precarious financial position in the months leading up to the September 2007 shut down, Plaintiff could not, as a matter of law, have reasonably relied on any challenged statement or supposed omission as a basis for believing that NetBank deposits in excess of the FDIC insured amount were not at risk. *See S.Q.K.F.C., Inc.*, 84 F.3d at 636-37 (dismissing claim under § 349, holding that no "reasonable consumer would have been misled by the defendant's conduct"). Plaintiff's claim under § 349 should be dismissed.

### 4. Plaintiff's allegations regarding renewal of his certificate of deposit fail to state any claim

Finally, Plaintiff's allegations regarding a notice of renewal pertaining to a NetBank certificate of deposit that Plaintiff claims to have received from NetBank on or after September 4, 2007 (*see* Compl., ¶¶ 17-18) fail to state any claim for which relief can be granted. While Plaintiff's contentions regarding the renewal notice are far from clear, it appears that Plaintiff is attempting to allege that the sending of the notice itself constituted a fraudulent or deceptive misrepresentation, or at minimum, an act of negligence, for which Defendants are somehow

responsible.  Such a proposition finds no support on the face of Plaintiff's allegations and should be rejected.

First, Plaintiff alleges no basis whatsoever for the unfounded assertion that either Defendant or Herbert "caused" NetBank to send the notice to Plaintiff.  Second, nothing alleged in the Complaint supports Plaintiff's contention that sending the notice was fraudulent, deceptive, negligent, or in any way improper.  Plaintiff appears to contend that the notice was improper because, prior to the date of the notice, NetBank, Inc. had publicly announced that NetBank had received notice that OTS had determined that NetBank was "undercapitalized" and was subject to various restrictions including, *inter alia*, "limitations on . . . accepting renewing or rolling over brokered [deposits]."[11]  Compl., ¶¶ 17-18.  Plaintiff does not allege, however, that Plaintiff's certificate of deposit was among the category of "brokered deposits" as to which renewal was restricted or that renewal of Plaintiff's certificate of deposit was otherwise precluded.  Finally, even if the renewal notice somehow violated the applicable restrictions, Plaintiff could not have reasonably relied on the notice, given his concession that the restrictions had been previously publicly disclosed in the Form 8-K.

## IV.    CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss the Complaint in its entirety under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Dated:  February 11, 2008.

Respectfully submitted,

*s/ Lisa Albert*
Lisa Albert (LA-7264)
KING & SPALDING LLP
1185 Avenue of the Americas

---

[11]  By referring to "brokered accounts" rather than "brokered deposits" Plaintiff misquotes the Form 8-K.

New York, NY 10036-4003
Telephone:  212-556-2100
Fax:  212-556-2222

and

Michael R. Smith *(admitted pro hac vice)*
Benjamin Lee *(admitted pro hac vice)*
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: 404-572-4600
Fax:  404-572-5100

*Attorneys for Defendants Steven F. Herbert
and James P. Gross*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, this day, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED) was served by filing in the Court's CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Kenneth A. Elan                                    *elanfirm@yahoo.com*
Kenneth A. Elan, Esq
217 Broadway
New York, NY 10007

Deborah R. Gross                                *debbie@bernardmgross.com*
Law Offices of Bernard M. Gross, P.C.
Wanamaker Building
100 Penn Square East
Suite 450
Philadelphia, PA 19107

DATED: February 11, 2008.

*s/ Lisa Albert*
Lisa Albert (LA-7264)