IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MATTHEW TOTILO, individually and on behalf of himself and all others similarly, situated, | : : : | |
| Plaintiff, | : : | CLASS ACTION NO. 07-cv-10991 |
| v. | : : : | |
| STEVEN F. HERBERT and JAMES P. GROSS | : : : | |
| Defendants. | : | |

PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS
TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND IMPROPER VENUE AND FOR TRANSFER

**TABLE OF CONTENTS**

PAGE

I. FACTUAL STATEMENT ...................................................................................1

II. ARGUMENT ...................................................................................................3

A. PERSONAL JURISDICTION OVER DEFENDANTS IS
PROPER IN THE SOUTHERN DISTRICT OF NEW YORK...................3

1. Legal Standards...............................................................................3

2. Jurisdiction is Proper Under Agency Theory..................................4

3. This Court Has Jurisdiction Pursuant to CPLR §302(a)(1) ...........11

4. This Court has Jurisdiction Pursuant to CPLR §301 .....................12

5. Jurisdiction in New York Comports with
Due Process....................................................................................14

B. VENUE IS PROPER IN THE SOUTHERN
DISTRICT OF NEW YORK .......................................................................16

C. DEFENDANTS HAVE NOT DEMONSTRATED
SUFFICIENT GROUNDS TO TRANSFER VENUE ..............................17

1. The Plaintiff's Choice of Forum ...................................................19

2. The Convenience of the Parties ....................................................19

3. Means of the Parties and Familiarity with Governing
Law ...............................................................................................21

4. Judicial Efficiency and the Interest of Justice...............................22

III. CONCLUSION...................................................................................................24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.I. Trade Finance, Inc. v. Petra Bank,*
   989 F.2d 76 (2d Cir. 1993)...................................................................................4

*Aerotel, Ltd. v. Spring Corp.,* 1
   00 F. Supp. 2d 189 (S.D.N.Y. 2000)....................................................................20

*Agency Rent A Car Systems, Inc. v. Grant Rent A Car Corp.,*
   98 F.3d 25 (2d Cir. 1996)....................................................................................4

*Albert Fadem Trust v. Duke Energy Corp.,*
   214 F. Supp. 2d 341 (S.D.N.Y. 2002).................................................................18

*Alpha International, Inc. v. T-Reproductions, Inc.,*
   2003 U.S. Dist. LEXIS 11224 (S.D.N.Y. June 27, 2003)......................................6

*America Eagle Outfitters, Inc. v. Tala Brothers Corp.,*
   457 F. Supp. 2d 474 (S.D.N.Y. 2006).................................................................22

*American Steamship Owners Mutual Protection and Indemnity
Association, Inc. v. Lafarge North America, Inc.,*
   2007 U.S. Dist. LEXIS 3652 (S.D.N.Y. Jan. 16, 2007)..................................18, 19, 21

*Arch Specialty Insurance Co. v. Entertainment Specialty Insurance
Services, Inc.,*
   2005 U.S. Dist. LEXIS 4746 (S.D.N.Y. Mar. 24, 2005) .......................................8

*Asahi Metal Industry Co. v. Superior Court,*
   480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)......................................14

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
   902 F.2d 194 (2d Cir. 1990).................................................................................4

*Bank Brussels v. Fidder Gonzalez & Rodgriguez,*
   171 F.3d 779 (2d Cir. 1999).................................................................................4

*Bates v. C & S Adjusters, Inc.,*
   980 F.2d 865 (2d Cir. 1992)...............................................................................17

*Bensusan Restaurant Corp. v. King,*
   126 F.3d 25 (2d Cir. 1997)..................................................................................4

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ......................................14, 15

*Cool Wind Ventilation Corp. v. Sheet Metal Workers Intern. Association,*
    *Local Union Number 28*,
    216 F. Supp. 81 (E.D.N.Y. 2002) .............................................................................16

*CutCo Industrial, Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)......................................................................................12

*In re Cuyahoga Equipment Corp.*,
    980 F.2d 110 (2d Cir. 1992).......................................................................................18

*D.H. Blair & Co., Inc. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006).........................................................................................18

*Daniel v. American Board of Emergency Medicine*,
    428 F.3d 408 (2d Cir. 2005)..................................................................................16, 17

*Family Internet, Inc. v. Cybernex, Inc.*,
    1999 U.S. Dist. LEXIS 15549 (S.D.N.Y. Oct. 6, 1999) ..................................10, 11,13

*Flowserve Corp. v. BMCE, Inc.*,
    2006 U.S. Dist. LEXIS 73942 (S.D.N.Y. Oct. 12, 2006) ...........................................20

*Goggin v. Alliance Capital Management, L.P.*,
    279 F. Supp. 2d 228 (S.D.N.Y. 2003)........................................................................16

*Gulf Oil v. Gilbert*,
    330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)....................................................19

*Hypoxico v. Colorado Altitude Training LLC*,
    2003 U.S. Dist. LEXIS 11862 (S.D.N.Y. July 14, 2003) ...........................................11

*K.C.P.L., Inc. v. Nash*,
    1998 U.S. Dist. LEXIS 18464 (S.D.N.Y. Nov. 24, 1998)..............................................6

*Karabu Corp. v. Gitner*,
    16 F. Supp. 319 (S.D.N.Y. 1998)................................................................................8

*Kinetic Instruments, Inc. v. Lares*,
    802 F. Supp. 976 (S.D.N.Y. 1992) ..............................................................4, 5, 10, 13

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991).........................................................................................12

*Lynch v. Nat. Prescription Admin'rs*,
    2004 U.S. Dist. LEXIS 3134 (S.D.N.Y. Mar. 1, 2004) ...................................19, 21, 22

*Mattel, Inc. v. Adventure Apparel*,
    2001 U.S. Dist. LEXIS 3179 (S.D.N.Y. Mar. 22, 2001) ...............................................7

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996).........................................................................................14, 15

*New Angle Pet Products v. MacWillie's Golf Products*,
    2007 U.S. Dist. LEXIS 46952 (E.D.N.Y. June 28, 2007) ...........................................6

*Pall Corp. v. PIT Technologies, Inc.*,
    992 F. Supp. 196 (E.D.N.Y. 1998) ..........................................................................21

*Panama Processes, SA v. Cities Serv. Co.*,
    650 F.2d 408 (2d Cir. 1981).......................................................................................20

*Pearson Education, Inc. v. Wiley & Sons*,
    2007 U.S. Dist. LEXIS 91444 (S.D.N.Y. Dec. 11, 2007) ...........................................15

*Philip Morris USA Inc. v. Veles Ltd.*,
    2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12, 2007) ...........................................6

*Raytheon Co. v. Nat. Union Fire Insurance Co. of Pittsburgh, PA*,
    306 F. Supp. 2d 346 (S.D.N.Y. 2004)........................................................................22

*Retail Software Services v. Lashlee*,
    854 F.2d 18 (2d Cir. 1988)..........................................................................................8

*Saccoccio v. Relin, Goldstein & Crane, LLP*,
    2007 U.S. Dist. LEXIS 33145 (S.D.N.Y. May 7, 2007)..............................................19

*Samrat Ashoka Exports Ltd. v. Mannix World Imports Inc.*,
    2005 U.S. Dist. LEXIS 496 (S.D.N.Y. Jan. 12, 2005)................................................20

*Soviet Pan Am Travel Effort v. Travel Committee, Inc.*,
    756 F. Supp. 126 (S.D.N.Y. 1991) .............................................................................8

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000)..........................................................................................12

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997)............................................................................6

## STATE CASES

*ABKO Industrial, Inc. v. Lennon*,
  52 A.D.2d 435, 384 N.Y.S.2d 781 (1st Dept. 1976).....................................................13

*Laufer v. Ostrow*,
  55 N.Y.2d 305, 434 N.E.2d 692, 449 N.Y.S.2d 456 (N.Y. 1982).........................12, 13

*McGowan v. Smith*,
  52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981).........................................11

*Nilsa B.B. v. Blackwell H.*,
  84 A.D.2d 295, 445 N.Y.S.2d 579 (2d Dept. 1981) ....................................................13

*Parke-Bernet Galleries, Inc. v. Franklyn*,
  26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970).........................................11

*Kreutter v. McFadden Oil Corp.*,
  71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988).........................5, 10, 11, 14

## DOCKETED CASES

*Adcock v. NetBank, Inc., et al.*,
  Civ. No. 07-cv-2298 (BBM)(N.D. Ga.).......................................................................22

*DLJ Mortgage Capital, Inc. v. NetBank, Inc., et al.*,
  Civ. No. 06-cv-15211 (S.D.N.Y.) ................................................................................7

*NetBank v. Mortgage Center, Inc. et al.*,
  Civ. No. 05-cv-03955 (ERK).......................................................................................7

*The Provident Bank v. Community Home Mortgage Corp.*,
  Civ. No. 02-cv-5219 (JFB) .........................................................................................7

*Vahdat v. NetBank, Inc., et al.*,
  Civ. No. 07-cv-2631 (BBM)(N.D. Ga.).......................................................................22

## FEDERAL STATUTES

28 U.S.C. §1391(b)(1) ..................................................................................................16

28 U.S.C. §1391(b)(2) ............................................................................................16, 17

28 U.S.C. §1404(a) ..................................................................................................1, 17

Defendants Steven F. Herbert ("Herbert") and James P. Gross ("Gross"),[1] residents of South Carolina, are the former principal executive officers of NetBank, FSB, and its parent company, NetBank, Inc. (together "NetBank"), an internet bank which has sought bankruptcy protection in Florida and whose assets have been sold to ING Bank, EverBank and LEAF Financial.[2]  As a result, there is no longer any connection to the Northern District of Georgia by defendants or by NetBank.   Therefore, defendants' motions to dismiss the Complaint on the grounds of lack of personal jurisdiction and improper venue, or in the alternative motion to seek transfer to the Northern District of Georgia pursuant to 28 U.S.C. §1404(a), should be denied in their entirety.

## I.      FACTUAL STATEMENT

NetBank was the largest internet bank in the U.S.  NetBank had no branch offices. All of its business with plaintiff and other depositors was transacted over the internet and through the use of the mails. Complaint ¶1.  NetBank operated in the contemporary world of electronic delivery of information and eschewed traditional banking practice characterized by the use of branch offices and employees to conduct banking business and interface with depositors.  Thus, defendants entered New York for the purpose of soliciting depositors for NetBank and the systematic and continuous operation of the bank.  Defendants were able to accomplish this primarily through the use of the Internet and grew the bank in this fashion to the point where it had deposits in excess of $2

---

[1] Defendant Herbert was NetBank's Chief Executive Officer ("CEO") and defendant Gross was NetBank's Chief Financial Officer ("CFO"). Complaint ¶¶2, 3, 10, 11.

[2] *See* Resource America, Inc.'s SEC Form 8-K dated October 25, 2007, attached as Exhibit A to Gross Declaration and Bloomberg.com news article entitled "NetBank Files for Bankruptcy After Regulators Take Over Unit," dated September 29, 2007, attached as Exhibit B to Gross Declaration.

1

billion. Thus, historical notions of "being physically present" in order to conduct business have no application here.

Plaintiff's claims[3] against Herbert and Gross arise out of their purposeful banking business activity conducted in the State of New York. Herbert and Gross each, directly and on behalf of NetBank and its parent company, transacted NetBank's banking business in and purposely projected themselves into the State of New York by, *inter alia*, use of electronic means, i.e., the Internet, and the use of the mails. Complaint ¶¶1, 7. NetBank had one small executive office in a suburb of Atlanta which has been closed. On September 28, 2007, the Office of Thrift Supervision ("OTS") and Federal Deposit Insurance Corporation ("FDIC") took over the operations of NetBank and closed it down.

No party to this action is from or resides in Georgia. Plaintiff is a New York resident. Complaint ¶9. The two defendants are residents of South Carolina. There also are no witnesses in Georgia. There are no relevant documents in Georgia. NetBank's documents have been moved by the FDIC and OTS to Texas and Washington, D.C. After the OTS and FDIC shut down NetBank, NetBank's assets were bought by ING

---

[3]Defendants' wrongdoing is detailed in the complaint and in plaintiff's memorandum in opposition to defendants' third motion to dismiss, entitled "Defendants' Motion to Dismiss for Failure to State a Claim." In sum, defendants operated NetBank "in the absence of the contrary to sound proper and prudent banking business practices and without meeting regulatory capital requirements," Complaint ¶14, and without adequate internal controls, proper loan documentation, underwriting standards and reserves for loan delinquencies and losses. Complaint ¶1. Defendants hid their improper actions from plaintiff by making a series of false and misleading statements in NetBank's SEC filings and press releases. Complaint ¶¶ 2, 3, 10, 11, 15 and16(a)-(e). Defendants' last improper act before the OTC stepped in and took over NetBank on September 28, 2007, consisted of mailing to plaintiff on September 4, 2007, a Notice of Maturity to roll over his deposits in NetBank. Complaint ¶18. The Notice of Maturity was not only mailed in violation of an agreement with the OTS which defendants negotiated, but also failed to disclose, *inter alia*, that NetBank was not a going concern and that plaintiff's deposits in excess of FDIC limits would not be returned to him on maturity, or at any other time. Complaint ¶¶17, 18.

2

Bank, LEAF Financial, and EverBank.[4]  When defendants filed for bankruptcy protection for NetBank, they went to Jacksonville, Florida, where the liquidation proceeding is now pending.

Plaintiff conducted all of his business relating to his NetBank deposits from New York.  Defendants solicited plaintiff and other depositors in New York through the internet and use of the mails.  *See* Declaration of Matthew Totilo ("Totilo Decl."), attached as Exhibit C to Gross Declaration.

Moreover, defendants conducted the business of NetBank and its parent in New York and availed themselves of New York in conducting NetBank's business.  They listed the parent company on the NASDAQ in New York.  They held conference calls with securities analysts located in New York.  They retained New York lawyers and held a closing in New York in connection with a private securities offering by NetBank's parent company in December 2006 and voluntarily chose to apply New York law to that private offering.  *See* NetBank Form 8-K filed with the SEC on January 8, 2007, attached as Exhibit D to Gross Declaration.

Accordingly, this court has personal jurisdiction over defendants, venue is proper in this court and there is no basis in law or fact to transfer the case to Georgia.

## II.    ARGUMENT

### A.    PERSONAL JURISDICTION OVER DEFENDANTS IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK

#### 1.    Legal Standards

Where, as here, there has not been any jurisdictional discovery, plaintiff need make only a *prima facie* showing of personal jurisdiction in order to defeat a motion to

---

[4] ING Bank is based in Wilmington, Delaware, EverBank is based in Jacksonville, Florida, and LEAF Financial is based in Philadelphia, Pennsylvania.

dismiss. *Bank Brussels v. Fidder Gonzalez & Rodgriguez*, 171 F.3d 779, 784 (2d Cir. 1999). Plaintiff may base his opposition to the motion on information in the complaint as well as any supporting documentation. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). Moreover, allegations in any pleadings and affidavits should be construed in the light most favorable to the plaintiff and doubts should be resolved in his favor. *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

To determine whether a court may exercise personal jurisdiction over a non-domiciliary, a district court engages in a two-part analysis. *Bank Brussels Lambert,*171 F.3d at 784. First, the court must determine whether jurisdiction exists under the law of the forum state, here, New York.[5] Second, the court must determine whether the exercise of jurisdiction under state law satisfies federal due process requirements. *Bank Brussels Lambert*, 171 F.3d at 784. "If the exercise of jurisdiction is appropriate under [the state's statutes], the court then must decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

The complaint sufficiently alleges that this court has general personal jurisdiction over Herbert and Gross pursuant to N.Y.C.P.L.R. ("CPLR") §301 and specific personal jurisdiction pursuant to N.Y.C.P.L.R. §302 under an agency theory.

## 2. Jurisdiction Is Proper Under Agency Theory

This Court has personal jurisdiction over Herbert and Gross under the law and rationale of *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976 (S.D.N.Y. 1992). In

---

[5]As defendants acknowledge, a court sitting in diversity applies the law of the state in which it is located to determine whether personal jurisdiction exists. *Agency Rent A Car Systems, Inc. v. Grant Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).

*Kinetic*, the court stated that "with the abandonment of the fiduciary shield doctrine[6] in New York, it is no longer necessary to 'pierce the corporate veil,' or find that the corporation is the 'alter ego' of the individual officers in order to subject them to jurisdiction on the basis of the corporation's contacts here." *Id.* at 984. With respect to corporate officers, *Kinetic* holds:

> [I]ndividual corporate officers may be subject to jurisdiction in New York if it is established that the corporation is acting as their agent here. . . .the transaction at issue performed by the corporation here must be with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the transaction.

*Id.* at 984 (holding personal jurisdiction established over corporate president based upon allegations that he was involved in day-to-day business operations of the corporation, including the manufacture and sale of accused product.); *see also Kreutter*, 71 N.Y.2d at 467, 527 N.Y.S.2d at 199, 522 N.E.2d at 44 (out-of-state corporate officer who has not personally transacted business in New York, can still be subject to personal jurisdiction in the state, if it can be shown that the corporation transacted business in New York as the officer's agent).

NetBank would clearly be subject to personal jurisdiction in New York as the result of their presence through "continuous and systematic" activities conducted in New York. In the modern business world, and in light of NetBank's business model, which eschewed the use of branch offices and employees in favor of use of the Internet and the mails to conduct the banking business of NetBank, New York courts, like courts of most other states, recognize that personal jurisdiction exists based on the Internet to reach into

---

[6] The fiduciary shield doctrine, which once provided some protection from personal jurisdiction to corporate officers acting in their corporate capacity, has been eliminated in New York. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 472, 522 N.E.2d 40, 47, 527 N.Y.S.2d 195, 202 (1988) ("the fiduciary shield doctrine is not available to defeat jurisdiction under the long-arm statute....").

a forum state and have adopted the internet jurisdiction range of interactivity test to determine if personal jurisdiction is appropriate. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (defendant who transmitted messages bearing infringing mark to residents in another state committed trademark infringement in recipient state). In *Zippo*, the court identified a sliding scale range of activity based on the interactivity level of the website. The courts in New York have embraced the ruling and rationale of *Zippo*. In *K.C.P.L., Inc. v. Nash*, 1998 U.S. Dist. LEXIS 18464, at *14 (S.D.N.Y. Nov. 24, 1998) (citing *Zippo*), the court stated that personal jurisdiction is permissible when it is "directly proportionate to the nature and quality of commercial activity that entity conducts over the internet."

The conclusions reached by these courts are particularly appropriate today since outdated notions of "being physically present" have no bearing on the current realities of businesses such as internet banking, where branch offices and employees do not exist. Here, the fact that defendants conducted NetBank's banking business, through the use of an interactive website, establishes personal jurisdiction in New York. *See also New Angle Pet Prods. v. MacWillie's Golf Prods.*, 2007 U.S. Dist. LEXIS 46952, at *8-10 (E.D.N.Y. June 28, 2007) (finding personal jurisdiction where defendants made sales over the internet into New York); *Philip Morris USA Inc. v. Veles Ltd.*, 2007 U.S. Dist. LEXIS 19780, at *17-18 (S.D.N.Y. Mar. 12, 2007) (finding personal jurisdiction where plaintiff "acknowledged hiring an investigator who made purchases from defendants' website, in addition to attempting to locate defendants' whereabouts and finding ways to serve them."); *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, 2003 U.S. Dist. LEXIS 11224, *3-8 (S.D.N.Y. June 27, 2003) (finding personal jurisdiction where defendant sold

infringing product to a New York resident through its website); *Mattel, Inc. v. Adventure Apparel*, 2001 U.S. Dist. LEXIS 3179, at *9-10 (S.D.N.Y. Mar. 22, 2001) (finding personal jurisdiction where allegedly infringing merchandise was ordered over defendant's website and shipped into New York because activity involved a commercial transaction that was actually consummated on line.).

Additionally, NetBank has voluntarily submitted to jurisdiction on prior occasions by being a party to various lawsuits in New York. *See, e.g., NetBank v. Mortgage Center, Inc. et al.*, Civ. No. 05-cv-03955 (ERK), (E.D.N.Y.), where NetBank itself in its complaint pleaded that it "regularly transacts business in New York.");[7] *The Provident Bank v. Community Home Mortgage Corp.*, Civ. No. 02-cv-5219, (JFB), (E.D.N.Y.) (Order dated May 7, 2007 granting NetBank, summary judgment in a case where it had moved to intervene as a plaintiff);[8] *DLJ Mortgage Capital, Inc. v. NetBank, Inc., et al.*, Civ. No. 06-cv-15211 (S.D.N.Y.) (pending in this court where it is alleged that NetBank breached mortgage servicing agreements which are governed by New York law and NetBank did not move to dismiss for lack of personal jurisdiction).[9]

Furthermore, defendants voluntarily submitted NetBank to jurisdiction in New York by consummating a private placement of 6.5 million shares of its common stock here. *See* Exhibit D to Gross Declaration. The purchase agreement for the private offering directed that the closing of the private placement occur at the law firm of Morrison & Forrester LLP, in New York. *See Id.*, Purchase Agreement, Section 3. The purchase agreement further stated that NetBank "submits to the nonexclusive jurisdiction

---

[7] *See* Exhibit E attached to Gross Declaration.

[8] *See* Exhibit F attached to Gross Declaration.

[9] *See* Exhibit G attached to Gross Declaration.

of the United States District Court of the Southern District of New York and any New York court sitting in New York City for purposes of all legal proceedings...." *Id.*, Purchase Agreement, Section 14.

Here, all of NetBank's contacts with New York were with the knowledge, consent and control of Herbert and Gross as corporate officers, thus making NetBank agent of defendants for personal jurisdictional. S*ee Retail Software Services v. Lashlee*, 854 F.2d 18 (2d Cir. 1988) (personal jurisdiction established where out-of-state president and vice president were alleged to have made oral misrepresentations and sent misleading financial statements to plaintiffs during corporation's advertising campaign in New York); *Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 130-31 (S.D.N.Y. 1991) (confers personal jurisdiction over non-resident corporate officers).

In their positions as top executives, defendants were clearly in control as they were responsible for all of the management decisions concerning NetBank clearly the "primary actor[s] in the transaction in New York that gave rise to the litigation, and not merely 'some corporate employee[s]...who played no part in it.'" *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (*quoting Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988); *see also Arch Specialty Insurance Co. v. Entertainment Specialty Insurance Services, Inc.*, 2005 U.S. Dist. LEXIS 4746, at *13 (S.D.N.Y. Mar. 24, 2005) (denying motion to dismiss and finding exercise of personal jurisdiction over individual defendant equitable considering significant role individual defendant played in the activities that gave rise to cause of action).

As CEO and Director, defendant Herbert was responsible for all of the management decisions concerning NetBank, including making filings in New York with

NASDAQ. Complaint ¶ 2; *see also* Exhibit D to Declaration of Lisa Albert, Declaration of Steven F. Herbert ("I served as NetBank, Inc.'s Chief Executive Officer from October 5, 2006 through my voluntary resignation effective December 31, 2007."). Herbert also was the principal spokesperson for NetBank, including presentations to security analysts located in New York. Complaint ¶2. In addition, Herbert signed sworn certifications mandated by federal law that were filed by the Company with the United States Securities and Exchange Commission ("SEC") attesting to, *inter alia*, the sound financial condition of NetBank, the accuracy of their consolidated financial statements and the adequacy of NetBank's internal financial controls. Complaint ¶2.

At and prior to September 28, 2007, defendant Gross was CFO, Principal Financial Officer and Principal Accounting Officer of NetBank. Complaint ¶3; s*ee also* Exhibit A to Declaration of Lisa Albert, Declaration of James P. Gross ("I have been employed as NetBank, Inc.'s Chief Financial Officer, Principal Officer, and Principal Accounting Officer since October 5, 2006."). While holding these three positions, Gross signed, on behalf of NetBank, seven SEC Form 8-K's filed in 2006, NetBank's third quarter 2006 SEC Form 10-Q, and six of NetBank's SEC Form 8-K's filed with the SEC in 2007. Complaint ¶3.

Defendant Gross also was a primary spokesperson for NetBank concerning all financial matters, including presentations to security analysts located in New York. Complaint ¶3. In addition, Gross signed the sworn certifications mandated by federal law that were filed by NetBank with the SEC attesting to, *inter alia*, the sound financial condition of NetBank, the accuracy of the consolidated financial statements of NetBank and the adequacy of its internal financial controls. Complaint ¶3.

Herbert and Gross each, directly and on behalf of NetBank and its parent company, transacted NetBank's banking business in and purposely projected themselves into the State of New York by, *inter alia*, use of electronic means, i.e., the internet, and the use of the mails. Complaint ¶¶1, 7. Defendants listed the parent company on the NASDAQ in New York. They held conference calls with securities analysts located in New York. They retained New York lawyers and held a closing in New York in connection with a private securities offering by NetBank's parent company in December 2006 and voluntarily chose to apply New York law to that private offering. Defendants solicited via the internet and mails plaintiff and other depositors in New York. A maturity notice dated September 4, 2007, was mailed directly to plaintiff's residence in New York by NetBank informing plaintiff that his 12-month certificate of deposit was scheduled to mature on September 24, 2007.

Contrary to defendants' position, *Kinetic* does not require a *prima facie* showing that the defendants, as corporate officers, received some personal benefit in order to confer agency jurisdiction. *Kinetic*, 802 F. Supp. at 984.[10] In any event, it is obvious that defendants could satisfy any "benefit requirement" if imposed by the court. As CEO, Herbert received an annual base salary of $360,000, a maximum bonus of 150% of his base salary, as well as restricted stock while serving as CEO.[11] As CFO, Gross received

---

[10] The cases cited by defendants are distinguishable from the case at hand. Although the court in *Kreutter*, mentions a "benefit," this factor is never applied in its agency analysis for jurisdiction. 71 N.Y.2d 460, 472, 522 N.E.2d 40, 47, 527 N.Y.S.2d 195, 202. Additionally, in *Family Internet, Inc. v. Cybernex, Inc.*, the court found that the individual defendant was never an officer, director or shareholder of the company so plaintiff could not establish that defendant was a primary actor for purposes of jurisdiction. 1999 U.S. Dist. LEXIS 15549, at *25 (S.D.N.Y. Oct. 6, 1999).

[11] NetBank, Inc.'s SEC Form 8-K/A dated January 4, 2007, attached as Exhibit H to Gross Declaration.

an annual base salary of $240,000, a maximum bonus of 75%, as well as restricted stock while serving as CFO.[12]

### 3.    This Court Has Jurisdiction Pursuant to CPLR § 302(a)(1)

Herbert and Gross have sufficient contacts with New York as corporate officers of NetBank to satisfy specific personal jurisdiction under §302(a)(1). Under New York's long-arm statute, personal jurisdiction may be maintained over a non-domiciliary who transacts any business in the state if the cause of action arises from the subject matter of the business transacted.[13] *See Hypoxico v. Colorado Altitude Training LLC*, 2003 U.S. Dist. LEXIS 11862, at *8 (S.D.N.Y. July 14, 2003); *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321(1981).  A defendant "transacts business" under Section 302(a)(1) when it "purposely avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law." *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y. 2d 13, 18, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970).

A single transaction of business is sufficient to give rise to specific jurisdiction, even where defendant never enters the state, if the claim arises out of the transaction. *Kreutter*, 71 N.Y. 2d 460, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195; *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y. 2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (N.Y. 1970).  On the

---

[12] *Id.*

[13] Section 302(a)(1) provides, in pertinent part, as follows:

> [A] court may exercise personal jurisdiction over a non-domiciliary, or his executor or administrator who in person or through an agent…

>> 1.    Transacts any business within the state or contracts anywhere to supply goods or services in the state…

N.Y.C.P.R. § 302(a)(1) (2006).

11

other hand, "no single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

As set forth above, NetBank "transacted" business in New York, under the consent, knowledge and control of the defendants to confer jurisdiction. Defendants listed the parent company on the NASDAQ in New York. They held conference calls with securities analysts located in New York. They retained New York lawyers and held a closing in New York in connection with a private securities offering by NetBank's parent company in December 2006. Defendants also caused NetBank to mail plaintiff his account statements, including the Notice of Maturity, Exhibit A to the complaint, informing plaintiff of the automatic renewal of his CD.

Thus, plaintiff has made the required *prima facie* showing for exercising jurisdiction over defendants under CPLR §302(a)(1).

### 4.    This Court Has Jurisdiction Pursuant To CPLR §301

Herbert and Gross have sufficient contacts as corporate officers of NetBank to satisfy general personal jurisdiction under §301. A non-domiciliary defendant is subject to personal jurisdiction in New York if he is "doing business" in New York, *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000), that is, where the defendant is engaged in "such a continuous and systematic course of activity that it can be deemed present in the state of New York." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50-51 (2d Cir. 1991) (*quoting Laufer v. Ostrow*, 55 N.Y.2d 305, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456 (N.Y. 1982).

Although it did not reach §301 in its holding, the *Kinetic* court relied on the reasoning in *Kreutter* to conclude that a corporation may serve as an agent for corporate officers under the "other provisions of the statute." *Kinetic*, 802 F. Supp. at 984; *see also Family Internet, Inc. v. Cybernex, Inc.*, 1999 U.S. Dist. LEXIS 15549, at *24 (S.D.N.Y. Oct. 6, 1999) ("Subsequent decisions have indicated that the logic of *Kreutter* applies to the entire long-arm statute, . . . and to a wide variety of officers, directors, or shareholders.") (internal citations omitted).[14]

Hence, the rationale set forth in *Kinetic* applies in equal force to confer jurisdiction under §301. As set forth above, NetBank engaged in "systematic and continuous" business activities in New York, under the consent, knowledge, and control of the defendants as corporate officers. Defendants conducted the business of NetBank and its parent in New York. They listed the parent company on the NASDAQ in New York. They held conference calls with securities analysts located in New York. They retained New York lawyers and held a closing in New York in connection with a private securities offering by NetBank's parent company in December 2006 and voluntarily chose to apply New York law to that private offering. Defendants solicited plaintiff and other depositors in New York via the internet and the mails.

---

[14] Defendants' reliance on *Laufer* and *Family Internet* to support the idea that this court cannot have jurisdiction over corporate officers under §301 unless their activities in New York were in an individual capacity is undermined by the more liberal analysis in *Kinetic*. Furthermore, the New York state courts have not determined whether the "doing business" test is applicable to individuals. In *Laufer v. Ostrow*, the New York Court of Appeals sidestepped this issue. 55 N.Y.2d at 313-14, 449 N.Y.S.2d at 460-61 (1982) (holding that continuous and systematic presence of corporate officer may have bearing on the presence of the corporation under the "doing business" test, but it does not render the officer, himself, present). However, the courts of the New York Appellate Division are divided on the issue. *Compare ABKO Indus., Inc. v. Lennon*, 52 A.D.2d 435, 439-40, 384 N.Y.S.2d 781 (1st Dept. 1976) (applying the "doing business" test to an individual and holding that Beatles drummer Ringo Starr was doing business in New York), *with Nilsa B.B. v. Blackwell H.*, 84 A.D.2d 295, 304-05, 445 N.Y.S.2d 579 (2d Dept. 1981) (declining to apply the "doing business" test to an individual).

Under the circumstances, it is clear that plaintiff has made the required *prima facie* showing for exercising jurisdiction over defendants under CPLR §301.[15]

### 5.    Jurisdiction in New York Comports with Due Process

The "minimum contacts" described above provided fair warning to the defendants of the possibility of being subject to the jurisdiction of New York courts. *See Kreutter*, 71 N.Y. 2d 460, 522 N.E.2d at 43, 527 N.Y.S.2d at 198 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). The assertion of jurisdiction over defendants in New York would not violate the traditional notions of fair play and substantial justice that is part of the jurisdictional analysis. This is essentially a reasonableness test, which is based on the following factors: the burden that the exercise of jurisdiction will have on the defendant; the interests of the forum state in adjudicating the case; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the states in furthering substantive social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).

With respect to the burden issue, defendants argue that they may be required to produce voluminous documents that are located at or near Atlanta, Georgia. They also assert that many witnesses are located in Georgia and may have to travel to New York for depositions in this case. The Second Circuit, however, has stated that such factors do not create a burden sufficient to overcome otherwise valid jurisdiction. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996). As the court noted, "the conveniences of modern communication and transportation ease what would have

---

[15] Since plaintiff has made a *prima facie* showing of jurisdiction over defendants under the law of *Kinetic*, as well as under §302(a)(1) and §301, plaintiff need not establish jurisdiction under §302(a)(2) or (3).

been a serious burden only a few decades ago." *Id.* The Supreme Court has stated that, to reach constitutional magnitude, the inconvenience of travel must be "substantial." *Burger King Corp.*, 471 U.S. at 484. Defendants' vague contentions about the burden of document production and depositions of witnesses, without any supporting evidence or affidavits, simply fail to establish the burden needed to show jurisdiction in New York is not reasonable.

Similarly, plaintiff's interest in obtaining convenient and effective relief are served by maintaining this action in New York. Plaintiff has significant contacts with New York and all of his actions with respect to his deposit account took place here. Plaintiff did not simply choose New York because it was the only jurisdiction where he could bring a valid claim. Plaintiff resides in New York and all his transactions with NetBank emanated from New York.

The next factor, the efficient administration of justice, looks to where the witnesses and evidence are likely located. While defendant may have some witnesses in Atlanta, this should not tip the balance of this issue in their favor. As described in more detail in Section C of this Memorandum of Law, it is likely that discovery will be conducted involving locations all across the country.

Finally, the shared interests of the states in furthering substantive policies do not weaken this court's jurisdiction over defendants. After inserting themselves into this state to transact business, defendants cannot now be heard to complain that subjecting them to jurisdiction in New York violates due process considerations.

As the foregoing discussion makes clear, defendants have sufficient contacts with the state of New York to invoke its general and specific jurisdiction and doing so in no

way violates their due process rights. *See Pearson Educ., Inc. v. Wiley & Sons*, 2007 U.S. Dist. LEXIS 91444, at *14 (S.D.N.Y. Dec. 11, 2007) (denying 12(b)(2) motion to dismiss and holding that due process requirements satisfied for asserting personal jurisdiction over defendants).

**B.    VENUE IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK**

Defendants initially argue that venue is not proper in New York because none of the defendants reside in New York pursuant to 28 U.S.C. §1391(b)(1). This is a strange position since defendants alternatively request that the case be transferred to the Northern District of Georgia, ironically where no party to this action is resides. Plaintiff is a New York resident and the two defendants are residents of South Carolina. Defendants also suggest that venue is improper, pursuant 28 U.S.C. §1391(b)(2), because a substantial part of the events giving rise to plaintiff's claims did not occur here.

In order to determine whether venue is proper under 28 U.S.C. §1391(b)(2), the court must "identify the nature of the claims and the acts or omissions that that plaintiff alleges give rise to those claims." *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 432 (2d Cir. 2005). Second, the court must "determine…whether significant events or omissions material to those claims have occurred in the district in question." *Id.* In addressing this issue, it is critical to keep in mind that a plaintiff's choice of venue is given significant deference. *Cool Wind Ventilation Corp. v. Sheet Metal Workers Intern. Assn., Local Union No. 28*, 216 F. Supp. 81, 85 (E.D.N.Y. 2002). The deference is greater where, as here, there is a material connection or significant contact between the forum and the events at issue. *Goggin v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228 (S.D.N.Y. 2003). "When material acts or omissions within the

16

forum bear a close nexus to the claims, they are properly deemed . . . substantial."
*Daniel*, 428 F.3d at 433.

As set forth in the section above, venue is clearly proper in the Southern District
of New York since a "substantial" portion of events or omissions giving rise to this
lawsuit occurred here. U.S.C. §1391(b)(2). Plaintiff claims that he was harmed by the
defendants' fraudulent and negligent statements regarding the security and safety of all
deposits in NetBank, that those statements were mailed to him in New York, and that his
banking transactions occurred in New York. *See* Totilo Decl. *Cf. Bates v. C & S
Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (receipt of debt collection notice a
substantial part of events giving rise to claim under Fair Debt collection Practices Act).
Hence, venue is proper in this district

### C.      DEFENDANTS HAVE NOT DEMONSTRATED
### SUFFICIENT GROUNDS TO TRANSFER VENUE

Even though as set forth *infra*, the Southern District of New York has jurisdiction,
defendants seek, as alternative relief, to have this court transfer the case to the Northern
District of Georgia. Section 1404(a) permits a district court to transfer a civil action to
any other district only if the action could have been brought in that jurisdiction. 28 U.S.C.
§1404(a). It is not at all clear that this case could have been brought in the Northern
District of Georgia. Neither defendant is a resident of or resides in Northern District of
Georgia. In fact, many of the arguments defendants make here as to why this court has
no jurisdiction and why venue is improper would be equally applicable if plaintiff had
filed the case it in Northern District of Georgia.

Under Section 1404(a), "[m]otions to transfer lie within the broad discretion of
the court and are determined upon notions of convenience and fairness on a case-by-case

basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)). The party moving for a change of venue bears the burden of establishing by clear and convincing evidence that transfer is appropriate. *American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge North America, Inc.*, 2007 U.S. Dist. LEXIS 3652, at *14 (S.D.N.Y. Jan. 16, 2007) (denying motion to transfer venue). In making such a determination, the court may consider the following factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *D.H. Blair*, 462 F.3d at 106-107 (*quoting Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)).

Applying these factors, there is no evidence that clearly and convincingly establishes that transfer is appropriate. No plaintiff or defendant is in Northern District of Georgia. No documents are in the Northern District of Georgia. No witnesses are in Northern District of Georgia. NetBank, Inc.'s bankruptcy proceeding is pending in the Middle District of Florida. Defendants' attorneys have offices in the Southern District of New York. Defendants' costs are funded by their insurance companies. Plaintiff and his counsel are in New York and Philadelphia. The inconvenience and cost to plaintiff of litigating in the Northern District of Georgia are substantial – particularly when weighed against the fact that there is no countervailing benefit to defendants from litigating in the Northern District of Georgia. Defendants have to travel from their home state regardless

of the forum for this litigation. In addition, as explained above, these defendants had routinely availed themselves of New York when it suited their purposes; *e.g.*, to list NetBank's parent's stock on the NASDAQ in New York, for NetBank's private placement of securities to choose attorneys and New York law to govern that private offering.

Thus, denial of defendants' transfer motion is supported by the facts set forth herein.

### 1.    The Plaintiff's Choice of Forum

Plaintiff chose New York since plaintiff resides in New York and received all his applications, renewals, and information in New York. "Ordinarily, courts should defer to a plaintiff's choice of forum." *Saccoccio v. Relin, Goldstein & Crane, LLP*, 2007 U.S. Dist. LEXIS 33145, at *4 (S.D.N.Y. May 7, 2007). Plaintiff's choice of forum should not be disturbed "unless the defendants made a clear and convincing showing that the balance of convenience favors defendants' choice." *Id.*, 2007 U.S. Dist. LEXIS 33145, at *3; *see also Gulf Oil v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

### 2.    The Convenience of the Parties

The convenience of the parties is often considered the single most important factor in the analysis of whether a transfer should be granted under Section 1404(a). *American Steamship*, 2007 U.S. Dist. LEXIS 3652, at *19.    *See Lynch v. Nat. Prescription Admin'rs*, 2004 U.S. Dist. LEXIS 3134 (S.D.N.Y. Mar. 1, 2004) (denying

motion to transfer venue); *Aerotel, Ltd. v. Spring Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) (denying motion to transfer venue).

Here, no party, plaintiff or defendant, is found in Northern District of Georgia. Plaintiff is in New York. Defendants are in South Carolina. No documents are in Northern District of Georgia since the company's assets have been purchased by ING Bank, EverBank and LEAF Financial. In fact, no witnesses are in Northern District of Georgia. NetBank's bankruptcy proceeding is in the Middle District of Florida.[16] EverBank is also located in Florida. ING is based in Delaware and LEAF Financial is based in Pennsylvania. The FDIC and OTS are located in Washington, D.C. and Dallas and NetBank's documents have been moved to Washington, D.C. and Texas.

Defendants have not named any witnesses or specific documents to support their position. Defendants have failed to "clearly specify the key witnesses to be called" which is required by the Second Circuit when parties seek transfer under Section 1404(a). *Panama Processes, SA v. Cities Serv. Co.*, 650 F.2d 408, 417 (2d Cir. 1981). *See also Flowserve Corp. v. BMCE, Inc.*, 2006 U.S. Dist. LEXIS 73942, at * (S.D.N.Y. Oct. 12, 2006) (denying motion to transfer in part because defendant failed to provided even a general statement of the likely testimony of the witnesses it identified in the transferee district); *Samrat Ashoka Exps. Ltd. v. Mannix World Imps. Inc.*, 2005 U.S. Dist. LEXIS 496, at * (S.D.N.Y. Jan. 12, 2005) (denying motion to transfer in part because movant did not specify number of witnesses or give "any indication as to the nature of the testimony"

---

[16]Although Defendants claim that NetBank's executive offices are in Alpharetta, Georgia, NetBank's Bankruptcy Petition dated September 28, 2007, lists Jacksonville, Florida as the main office. *See* Bankruptcy Petition, attached as Exhibit I to Gross Declaration. Furthermore, Debtor's Summary of Schedules lists two parcels of real estate in Columbia, South Carolina. *See* Bankruptcy Summary of Schedules, attached as Exhibit J to Gross Declaration.

to be given by them).   In assessing whether this factor favors transfer, the court generally

considers only those witnesses in the proposed transferee district.   *American Steamship*,

2007 U.S. Dist. LEXIS 3652, at *20.   In this case, the defendants, who are the two main

witnesses, do not even reside in the proposed transferee forum.

Additionally, courts have held that where the movant has an extensive nationwide

network, the scale tilts in favor of the non-movant. *See American Steamship*, 2007 U.S.

Dist. LEXIS 3652, at *26 (finding that convenience factor tipped in favor of plaintiff

because defendant's stock was publicly traded on the New York Stock Exchange and

company was the largest diversified supplier of construction materials in the U.S. and

Canada).   NetBank was, until September 27, 2007, the largest Internet bank with no

physical branches.  Complaint ¶12.  Clearly, this factor favors New York.

### 3.        Means of the Parties and Familiarity with Governing Law

Where a transfer would "merely switch the burden of inconvenience from one

party to another," this factor either is essentially neutral.   *Lynch v. Nat'l Prescription

Adm'rs.*, 2004 U.S. Dist. LEXIS 3134, at *11 (S.D.N.Y. Mar. 1, 2004) (balance of

convenience factor, "if not neutral, does not clearly swing in [movant's] favor" in such a

situation); *Pall Corp. v. PIT Technologies, Inc.*, 992 F. Supp. 196 (E.D.N.Y. 1998).

Clearly, this is simply an attempt to inconvenience the plaintiff, who has far less means

and resources that the defendants in this action, whose insurance companies are paying

their defense costs.  Defendants' attorneys even have offices in the Southern District of

New York.  There is a substantial disparity between the financial resources of the parties.

This weighs in favor of plaintiff.  Furthermore, the fact that this court in the Southern

District of New York would have more familiarity with the New York statute underlying

21

Count IV of plaintiff's complaint (violation of New York General Business Law Section 349) also weighs in favor of plaintiff. *See Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474 (S.D.N.Y. 2006) (where there are state law claims, the "forum's familiarity with governing law supports retention of the action").

### 4.    Judicial Efficiency and the Interest of Justice

Competing concerns about timing with respect to the securities fraud actions tip the interests of justice analysis in favor of maintaining venue here.  Judicial efficiency "mandates that the matter be decided at the earliest possible time." *Raytheon Co. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346, 354 (S.D.N.Y. 2004).

Contrary to what Defendants claim, the existence of two securities fraud class actions, *Adcock v. NetBank, Inc., et al.*, 1:07-cv-2298 (BBM) (N.D. Ga.) and *Vahdat v. NetBank, Inc., et al.*, 1:07-cv-2631 (BBM) (N.D. Ga.), has no bearing on this New York litigation.  "[W]hile the existence of related litigation in another district is a factor that favors transfer it is only one factor to consider and balance with all the other factors on a case-by-case basis." *Lynch*, 2004 U.S. Dist. LEXIS 3134, at *18 (denying defendant's motion to transfer venue even though related cases had similar factual and legal issues). *Adcock* and *Vahdat* were brought on behalf of classes of shareholders and will be litigated pursuant to the legal standards under the PSLRA.  Transferring this case to Georgia to be consolidated with these allegedly "related" securities class actions would only unnecessarily delay discovery and resolution of this case. Furthermore, although some parties and facts may overlap, plaintiff here represents a different class of individuals.  The class in this action consists of all persons who had deposits in NetBank in excess of $100,000.00 on September 28, 2007, the day NetBank was closed by the

$100,000.00 on September 28, 2007, the day NetBank was closed by the OTS and the FDIC was named receiver. Complaint ¶22. The class is pursuing claims for negligent representation, negligence, fraud, and violation of New York General Business Law Section 349 (which includes a New York subclass). Complaint ¶45.

Defendants argue that the relative congestion of the competing venues based upon available statistical data favors transfer to the Northern District of Georgia. *See* Defs' Memorandum at 4-5 (relying on Judicial Caseload Profile statistics). However, when comparing the two venues, although the Southern District of New York appears to have more cases, this venue has twice as many judges than the Northern District of Georgia which enables it to handle a larger caseload. *See* Southern District of New York website at http://www1.nysd.uscourts.gov/judges.php (listing 44 federal district judges and 15 federal magistrates) and compare Northern District of Georgia website at http://www.gand.uscourts.gove/publicaccess.htm. (listing 19 federal district judges and 9 federal magistrates). Given this additional factor, this forum clearly has the judicial manpower to oversee litigation relevant to New York law in an efficient manner. The requested transfer of venue should be denied.

## III.    CONCLUSION

For all the foregoing reasons, defendants' motions to dismiss and to transfer venue should be denied in their entirety.

Date:    February 26, 2008

**LAW OFFICES OF KENNETH  ELAN
BY:**

<u>/s/ Kenneth Elan – KAE-1729</u>
 **KENNETH ELAN (KAE-1729)**
217 Broadway, Suite 606
New York, NY 10007
Telephone: 212-619-0261
Fax: 212-385-2707

**LAW OFFICES BERNARD M. GROSS, P.C.
DEBORAH R. GROSS
ROBERT P. FRUTKIN**
Suite 450, The Wanamaker Bldg.
100 Penn Square East
Philadelphia, PA 19107
Telephone:  215-561-3600
Fax: 215-561-3000

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiff's Memorandum of Law In Opposition to Defendants' Motions To Dismiss for Lack of Personal Jurisdiction and Improper Venue and for Transfer; Declaration of Deborah R. Gross; and Plaintiff's Memorandum in Opposition to Defendants' Motion To Dismiss for Failure to State a Claim were served via electronic transmission and first class mail, postage prepaid, this 26th day of January, 2008 on counsel for defendant:

> Benjamin Lee, Esquire
> King & Spalding LLP
> 1180 Peachtree Street, NE
> Atlanta, GA 30309-3521
> Email: Blee@KSLaw.com

    /s/ Deborah R. Gross
**DEBORAH R. GROSS**